# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| BROWSERKEY, LLC, | |
| Plaintiff, | Case No. 2:24-CV-00800-JRG-RSP<br>(Lead Case) |
| v. | **JURY TRIAL DEMANDED** |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |
| BROWSERKEY, LLC, | |
| Plaintiff, | Case No. 2:24-CV-00798-JRG-RSP<br>(Member Case) |
| v. | **JURY TRIAL DEMANDED** |
| BANK OF AMERICA CORPORATION, BANK OF AMERICA, NATIONAL ASSOCIATION, and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED | |
| Defendants. | |

**BANK OF AMERICA DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

I.    STATEMENT OF THE ISSUES.................................................................................... 3

II.   BACKGROUND ......................................................................................................... 4

III.  LEGAL STANDARD................................................................................................. 5

   A.   Failure to State a Claim for Relief Pursuant to 12(b)(6)...................................... 5

IV.  ARGUMENTS .......................................................................................................... 5

   A.   Plaintiff does not make *specific* allegations against each of the Defendants...................... 6

      1.   Plaintiff improperly lumps all three Defendants together................................. 7

      2.   Regardless, BAC is not a proper party to this litigation. ................................ 8

   B.   Plaintiff fails to state a claim of direct infringement. ...................................... 10

      1.   Plaintiff fails to give sufficient notice of what product or products infringe............... 12

      2.   Plaintiff does not allege how the accused products verify, on the client machine, that the client machine is authorized to access data maintained on the server computer as required by step d........................................................................................ 13

      3.   Plaintiff does not allege how the accused products store the session identifier both within and remote from the client machine as required by steps c. and e. ........................... 16

      4.   Plaintiff does not allege what or how the purported session keys of the accused products are compared or whether such comparison allows for authorized access as required by steps g and h.................................................................................... 19

      5.   Plaintiff fails to plead that Defendants perform every claimed method step............... 20

   C.   Plaintiff also fails to state a claim of pre-suit indirect infringement................................ 21

   D.   Plaintiff does not sufficiently plead pre-suit willful infringement.................................... 27

V.   CONCLUSION......................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*,
No. 2:21-CV-172-JRG, 2022 WL 610796 (E.D. Tex. Jan. 24, 2022) ....................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................5, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................................5

*In re Bill of Lading*,
681 F.3d 1323 (Fed. Cir. 2012).................................................................................................21

*Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*,
998 F.3d 1320 (Fed. Cir. 2021).................................................................................................26

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .............................................................................................11, 19

*Celgene Corp. v. Mylan Pharms. Inc.*,
17 F.4th 1111 (Fed. Cir. 2021) ...................................................................................................9

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ..................................11

*Charboneau v. Box*,
No. 4:13-CV-678, 2017 WL 1159765 (E.D. Tex. Mar. 29, 2017) .............................................9

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) .............21, 25, 26

*Cunningham v. Lifestyles Dev., LLC*,
No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039 (E.D. Tex. Aug. 8, 2019) ......................7

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
642 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................................................................................26

*Cywee Grp. Ltd. v. Huawei Device Co.*,
No. 2:17-CV-495-WCB, 2018 WL 3819392 (E.D. Tex. Aug. 10, 2018)..................................13

*Dali Wireless Inc. v. Corning Optical Commc'ns LLC*,
638 F. Supp. 3d 1088 (N.D. Cal. 2022) ....................................................................................23

*DermaFocus LLC v. Ulthera, Inc.*,
    201 F. Supp. 3d 465 (D. Del. 2016) .................................................................................. 23

*Dialect, LLC v. Bank of Am., N.A.*,
    No. 2:24-CV-207-JRG, 2024 WL 4980794 (E.D. Tex. Dec. 3, 2024) ......................... 9, 26, 29

*Dow Jones & Co. v. Ablaise Ltd.*,
    606 F.3d 1338 (Fed. Cir. 2010) ........................................................................................ 9

*Dynamic Data Techs. v. Google LLC*,
    No. 19-1529-CFC, 2020 WL 1285852 (D. Del. Mar. 18, 2020) ........................................ 28

*E-Vision Optics, LLC v. Luxottica Grp. S.p.A.*,
    No. SA CV 23-02013-AB, 2024 WL 1601853 (C.D. Cal. Mar. 8, 2024) ............................ 8

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) ............................................................................................ 5

*Fractus, S.A. v. TCL Corp.*,
    No. 2:20-CV-97-JRG, 2021 WL 2483155 (E.D. Tex. June 2, 2021) ................................... 27

*Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*,
    561 F. Supp. 2d 653 (E.D. Tex. 2006) ................................................................................ 5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (Fed. Cir. 2011) ..................................................................................... 25, 26

*Golden v. Intel Corp.*,
    No. 2023-1257, 2023 WL 3262948 (Fed. Cir. 2023) ......................................................... 12

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ............................................................................................ 5

*Helios Streaming, LLC v. Vudu, Inc.*,
    No. 19-1792-CFC-SRF, 2021 WL 254069 (D. Del. Jan. 26, 2021) ................................... 25

*Hereford v. Carlton*,
    No. 9:15-CV-26, 2016 WL 7042230 (E.D. Tex. Mar. 16, 2016) ......................................... 9

*LBS Innovations, LLC v. Nokia USA Inc.*,
    No. 2:15-CV-1972-JRG, 2016 WL 3407611 (E.D. Tex. June 21, 2016) .............................. 20

*Lemko Corp. v. Microsoft Corp.*,
    No. 3:22-CV-363-L-BT, 2024 WL 3798217 (N.D. Tex. July 29, 2024) ............................... 12

*Lone Star Tech. Innovations, LLC v. Asustek Comput. Inc.*,
    No. 6:19-CV-59-RWS, 2020 WL 6803249 (E.D. Tex. Jan. 14, 2020) ................................. 20

*MasterObjects, Inc. v. Amazon.com, Inc.*,
  No. C 20-08103, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021)................................28

*McCulley v. McCormick*,
  No. 5:18-CV-108-RWS-JBB, 2022 WL 2704150 (E.D. Tex. July 12, 2022).........................6

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (Fed. Cir. 2007)................................................7

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
  No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)................................24

*Mobile Equity Corp. v. Walmart Inc.*,
  No. 2:21-CV-126-JRG-RSP, 2022 WL 4587554 (E.D. Tex. Sept. 8, 2022).........................23

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
  No. 6:20-CV-8876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) .............................28

*Motiva Pats., LLC v. Sony Corp.*,
  408 F. Supp. 3d 819 (E.D. Tex. 2019) .............................................24, 25

*Mullen Indus. LLC v. Samsung Elecs. Co.*,
  No. 2:24-CV-49-JRG, 2024 WL 4870768 (E.D. Tex. Nov. 21, 2024)..........................20, 21

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)................................................22, 26

*Network Sys. Techs., LLC v. Qualcomm Inc.*,
  No. 1:22-CV-1331, 2023 WL 11833572 (W.D. Tex. July 21, 2023)................................23

*Nichia Corp. v. VIZIO, Inc.*,
  No. 2:16-CV-1453-JRG, 2017 WL 3836141 (E.D. Tex. July 24, 2017).........................13, 15

*Nobelbiz, Inc. v. Insidesales.com, Inc.*,
  No. 6:13-CV-360-MHS, 2014 WL 12378804 (E.D. Tex. Oct. 14, 2014) .............................22

*Nonend Inventions, N.V. v. Apple Inc.*,
  No. 2:15-CV-466-JRG-RSP, 2016 WL 1253740 (E.D. Tex. Mar. 11, 2016) .................25, 29

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*,
  No. 6:11-CV-495-LED, 2013 WL 12153575 (E.D. Tex. Mar. 25, 2013) .............................22

*NorthStar Sys. LLC v. Volkswagen AG*,
  No. 2-22-cv-00486-JRG, 2023 WL 5723648 (E.D. Tex. Sept. 5, 2023)..................11, 17, 25

*Opticurrent, LLC v. Power Integrations, Inc.*,
  No. 2:16-CV-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016)..........................11, 27

*PanTaurus LLC v. Wells Fargo & Co.*,
No. 1:14-CV-450, 2015 WL 11110601 (E.D. Tex. Mar. 11, 2015) ....................................13

*Phoenix Licensing, LLC v. Alliance Data Sys. Corp.*,
No. 2:11-CV-286, 2012 WL 12896398 (E.D. Tex. May 1, 2012)............................................8

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.*,
No. 2:16-CV-1032-JRG, 2017 WL 8727249 (E.D. Tex. Sept. 22, 2017) ..............................27

*Realtime Data LLC v. EchoStar Corp.*,
No. 6:17-CV-84-RWS-JDL, 2017 WL 4693512 (E.D. Tex. July 19, 2017) .........................27

*Realtime Data, LLC v. Stanley*,
721 F. Supp. 2d 538 (E.D. Tex. June 10, 2010).....................................................................13

*Resonant Sys., Inc. v. Sony Grp. Corp.*,
No. 2:22-CV-424-JRG, 2023 WL 5723646 (E.D. Tex Sept. 5, 2023) .....................................8

*Script Security Sols. L.L.C. v. Amazon.com, Inc.*,
170 F. Supp. 3d 928 (E.D. Tex. 2016) ...................................................................................28

*Signode Indus. Grp. LLC v. Samuel, Son & Co.*,
No. 2:24-CV-80-JRG, 2024 WL 3543408 (E.D. Tex. July 25, 2004)....................................28

*Slyde Analytics, LLC v. Zepp Health Corp.*,
No. 2:23-CV-172-RWS-RSP, 2024 WL 4501979 (E.D. Tex. Aug. 28, 2024)........................8

*Uniloc USA, Inc. v. Avaya Inc.*,
No. 6:15-CV-1168-JRG, 2016 WL 7042236 (E.D. Tex. May 13, 2016) .................................5

*UTTO Inc. v. Metrotech Corp.*,
119 F.4th 984 (Fed. Cir. 2024) ..............................................................................................15

*Vega v. Maxim Integrated Prods., Inc.*,
No. 5:15-CV-1138-DAE, 2016 WL 9450607 (W.D. Tex. June 4, 2016)................................7

*Xiros, Ltd. v. Depuy Synthes Sales, Inc.*,
No. W-21-CV-681-ADA, 2022 WL 3592449 (W.D. Tex. Aug. 22, 2022)............................24

*ZitoVault, LLC v. IBM Corp.*,
No. 3:16-CV-962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018)....................................24

*Zix Corp. v. Echoworx Corp.*,
No. 2:15-CV-1272-JRG, 2016 WL 7042219 (E.D. Tex. Apr. 14, 2016) .................................6

**Statutes**

35 U.S.C. § 271......................................................................................................................6

vi

35 U.S.C. § 271(a) ........................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................1, 5, 9, 10

Defendants Bank of America Corporation ("BAC"), Bank of America, National Association ("BANA"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill") (collectively, "Defendants") move to dismiss with prejudice Plaintiff BrowserKey LLC's ("Plaintiff") First Amended Complaint ("FAC") (Dkt. 34) in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Despite amending its original Complaint (Dkt. 1), Plaintiff fails to address deficiencies outlined in BAC's motion to dismiss (Dkt. 24) and leaves its FAC riddled with conclusory allegations. Defendants therefore move to dismiss the FAC on five independent grounds.  First, the FAC adds infringement allegations against BANA and Merrill (subsidiaries of BAC) but only does so through claiming that all three Defendants are "jointly responsible" for infringing U.S. Patent No. 7,249,262 (the "Asserted Patent" or the "'262 Patent").  Dkt. 34 ¶ 9. Beyond mirroring a tort law theory of contribution that is not recognized by patent law, this vague and conclusory assertion fails to give notice to each Defendant of the ***specific*** charges against them—which is the sole purpose of a complaint.  And as explained in BAC's motion to dismiss, BAC is merely a holding company that offers no banking products or services (which Plaintiff recognizes) and thus is an improper Defendant in this case. *See* Dkt. 24 at 6–8; Dkt. 34 ¶ 2.

Second, Plaintiff's direct infringement allegations do not fare any better.  Plaintiff only vaguely defines the accused products as "web and mobile applications for all Bank of America affiliates." Dkt. 34 ¶ 19. This, again, fails to give notice to each Defendant of the ***specific*** charges against them—i.e., ***which*** product(s) of ***each*** Defendant are being accused. Along with merely offering *ipse dixit* allegations, the FAC fails to correct multiple inconsistencies—most of which BAC's motion to dismiss already identified (Dkt. 24 at 9–18). Third, Plaintiff alleges that actions

1

taken by entries other than Defendants satisfy multiple limitations of Claim 11 (the only claim identified in the FAC), but Plaintiff does not plead any facts to support divided infringement.

Fourth, with respect to pre-suit indirect infringement (the only type of indirect infringement applicable given that the '262 Patent expired before the filing of the Complaint), the FAC again simply regurgitates the relevant legal language. Though the FAC does now provide facts for its allegation that BAC purportedly had pre-suit knowledge of the '262 Patent, these facts are not adequate. And even if they were, the FAC provides no reason why this supposed knowledge should be imputed to BANA and Merrill. Indeed, Plaintiff alleges knowledge only through citations in the prosecution history of patents assigned to BAC. Regardless, knowledge of the asserted patent alone is not enough to plead indirect infringement. For induced infringement, a complaint must also allege specific intent to induce infringement to state a plausible claim. Plaintiff skips over this analysis and simply concludes without any corresponding facts that Defendants act "with the [specific] intent" to induce infringement, only pointing to general instructional materials in support—which this Court has found insufficient before. Dkt. 34 ¶ 36. Likewise, contributory infringement requires allegations directed to Defendants' knowledge of infringement. But, again, Plaintiff makes mere conclusory statements copying the relevant legal language and offers no factual allegations. And its single reference to willful blindness cannot act as a refuge given that it lacks factual allegations as well.

Fifth, Plaintiff also ignores the requirements to plead pre-suit willful infringement (which, again, is the only type of willful infringement available due to the fact that the '262 Patent expired prior to the filing of the suit). In addition to its deficient allegations regarding knowledge of the patent as described above, Plaintiff devotes none of its FAC to explaining how Defendants had knowledge of infringement or were willfully blind to it. Nor does Plaintiff even attempt to address

what actions of Defendants constituted the requisite culpable conduct for willful infringement. Such unsupported allegations cannot stand.

To summarize, Plaintiff's FAC does little more than its original Complaint did, again making conclusory allegations with minimal supporting facts. But now, it does so for three legally distinct entities, without drawing any meaningful distinction between the allegations against them. Defendants cannot defend against such threadbare and general allegations.

## I.    STATEMENT OF THE ISSUES

1.    Whether the Court should dismiss Plaintiff's FAC for failure to state a claim when it lumps all three Defendants together—despite being legally separate entities—and fails to make specific allegations against any one of the three Defendants.

2.    Whether the Court should dismiss Plaintiff's claims of direct infringement for failure to state a claim when Plaintiff makes conclusory, and at times contradictory, allegations without a plausible explanation of facts supporting its claims as to each of the three Defendants.

3.    Whether the Court should dismiss Plaintiff's claims of direct infringement for failure to state a claim when Plaintiff's infringement allegations for the only claim identified in the FAC include the actions of entities other than Defendants without pleading facts to support a theory of divided infringement.

4.    Whether the Court should dismiss Plaintiff's claims of indirect infringement for failure to state a claim when Plaintiff's claims of inducement and contributory infringement lack sufficient factual allegations as to Defendants' knowledge of the Asserted Patent, specific intent to induce infringement, and knowledge (either actual or through willful blindness) of infringement.

5.    Whether the Court should dismiss Plaintiff's claims of willful infringement for failure to state a claim when Plaintiff's sole reference to willful infringement is in its Prayer for

Relief and when the rest of its FAC fails to plead any facts to show knowledge (either actual or through willful blindness) of infringement.

## II.    BACKGROUND

On October 2, 2024, Plaintiff sued BAC for infringement of the '262 Patent, which is entitled "Method for Restricting Access to a Web Site by Remote Users." *See* Dkt. 1; *see generally* '262 Patent (Dkt. 34-1). The '262 Patent expired on January 11, 2024.  *See generally* '262 Patent. BAC filed a motion to dismiss the Complaint on December 12, 2024. *See* Dkt. 24. In response, Plaintiff filed the FAC on January 9, 2025. *See* Dkt. 34. The FAC makes essentially the same allegations as the original Complaint but adds BANA and Merrill as Defendants. *See generally* Ex. A (Comparison of FAC to original Complaint).

The '262 Patent, in the words of Plaintiff, "generally covers a method of restricting access to data maintained on a server computer by one or more authorized, networked client machines," which is allegedly "incorporated into web and mobile applications made by numerous banking institutions, including Defendants." *See* Dkt. 34 ¶ 18. According to Plaintiff's FAC, the accused products broadly include "at least all versions and variants of the Bank of America Web and Mobile Applications, including web and mobile applications for all Bank of America affiliates (*e.g.*, Merrill Lynch) since 2018." *See id.* ¶ 19. These accused products, per Plaintiff's recitation, both directly and indirectly infringe the '262 Patent. *See id.* ¶¶ 22–37.

Plaintiff goes on to broadly accuse "Bank of America" of infringement without providing any factual basis for grouping together each of the Defendants or their purportedly infringing "web and mobile applications." *See id.* ¶ 19. Regarding direct infringement, Plaintiff specifically alleges direct infringement of ***at least*** Claim 11 of the '262 Patent. *Id.* ¶ 24. Plaintiff then asserts indirect infringement through both induced and contributory infringement. *Id.* ¶¶ 35–37. And, per its

Prayer for Relief, Plaintiff alleges such infringement was supposedly willful. *Id.* at 22. The factual

basis supporting all the above, like in the original Complaint, is markedly absent.

## III.    LEGAL STANDARD

### A.  Failure to State a Claim for Relief Pursuant to 12(b)(6)

A party may move to dismiss for "failure to state a claim upon which relief can be granted"

under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required under Rule 12(b)(6) when

the complaint does not plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th

Cir. 2009). The complaint must offer more than mere "labels and conclusions" or a "formulaic

recitation" of a cause of action's elements. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). Instead, to survive dismissal, a plaintiff must offer "factual content" that shows

"more than a sheer possibility that a defendant has acted unlawfully" in order to "unlock the doors

of discovery." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 557). While courts are

bound to accept well-pleaded facts as true, they "***do not accept as true*** conclusory allegations,

unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780

(5th Cir. 2007) (emphasis added) (internal citation omitted); *see also Iqbal*, 556 U.S. at 679

("While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations."). Less tangible software-based claims, as alleged here, require more detail to

state a claim and provide fair notice. *See Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-CV-1168-JRG,

2016 WL 7042236, at *3 (E.D. Tex. May 13, 2016).

## IV.    ARGUMENTS

Plaintiff's FAC features massive holes in many necessary elements of its claims for relief.

This acts as an admission that such facts do not exist and thus requires dismissal. *See Gen. Cable

Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653, 658 (E.D. Tex. 2006) ("[W]hen a complaint

omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." (internal quotation omitted)). This is so even if Plaintiff argues that the relevant facts are in the hands of Defendants. *See McCulley v. McCormick*, 2022 WL 2704150, at *3 (E.D. Tex. July 12, 2022) ("[A] plaintiff armed with nothing more than conclusions . . . cannot unlock the doors of discovery."). As such, for the reasons below, Plaintiff's claims should be dismissed.

### A. Plaintiff does not make *specific* allegations against each of the Defendants.

Plaintiff attempts to accuse all three Defendants of infringement based solely on what appears to be a tort law theory of contribution. *See* Dkt. 34 ¶ 9 ("Upon information and belief, [BAC], BANA, and Merrill Lynch are all ***jointly responsible***[.]" (emphasis added)). This is not how patent law works. *See Zix Corp. v. Echoworx Corp.*, No. 2:15-CV-1272-JRG, 2016 WL 7042219, at *2 (E.D. Tex. Apr. 14, 2016) ("Courts considering this issue have uniformly held that there is no claim for contribution under the Patent Act."). The possible liability theories for patent infringement are outlined in 35 U.S.C. § 271—and they do not allow for an approach that hopes to sue multiple defendants for joint responsibility and simply see what sticks.

Further, the only facts Plaintiff offers for this alleged joint responsibility are that Defendants are supposedly all "responsible for the content present on bankofamerica.com" and "the Bank of America Mobile Application also references [BAC] and BANA trademarks." Dkt. 34 ¶¶ 9–10 ("For example, the Bank of America website states that '"our" … refers to banking and non-banking U.S. subsidiaries and affiliates.' The statement continues to state that 'by using our Sites and Mobile Apps you agree to the terms and conditions of [the Bank of America Privacy Policy.]' Merrill Lynch's website has the exact same policy."). Plaintiff's arbitrary references to websites, trademarks, and privacy policies are disconnected to the accused products or its patent infringement allegations and in no way explain how ***each*** Defendant ***alone*** purportedly infringes

the '262 Patent.[1] *See Vega v. Maxim Integrated Prods., Inc.*, 2016 WL 9450607, at *3 (W.D. Tex. June 4, 2016) (finding allegations of infringement "purely speculative given the lack of particularized and individualized facts pertaining to each defendant").

### 1.    Plaintiff improperly lumps all three Defendants together.

A complaint for patent infringement must "plead facts sufficient to place ***the alleged infringer*** on notice as to what ***he*** must defend." *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (emphases added). The FAC, however, accuses three legally distinct entities of infringement, yet it only makes the general allegation that "***Defendants*** have manufactured, used, marketed, distributed, sold, offered for sale, exported from, and imported into the United States, products that infringe the '262 Patent" because all three are "jointly responsible." Dkt. 34 ¶¶ 9, 19 (emphasis added). This improper conflation of entities continues in the FAC's definition of the accused products, which purportedly includes "web and mobile applications for all Bank of America affiliates." *Id.* ¶ 19. The FAC, though, only focuses on a single product—the "'Bank of America Mobile Banking' application for iOS and Android"—and fails to tie it to even a single Defendant or establish it as representative of all accused products for all three legally distinct entities. *Id.* ¶ 23. This is a classic example of an impermissible shotgun complaint. *See Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *4 & n.4 (E.D. Tex. Aug. 8, 2019) (explaining that a "shotgun pleading" that "lumps defendants together" is subject to dismissal, as

---

[1] What is more, bankofamerica.com's mention of "our Sites and Mobile Apps" explicitly refers to "U.S. affiliates or subsidiaries of Bank of America Corporation that link to or reference this Notice," which clearly excludes BAC—this makes sense because, as both Plaintiff and Defendants have acknowledged, BAC is a mere holding company the offers no products or services—and only attempts to refer to BAC's subsidiaries collectively for the purposes of the privacy notice, not for the purpose of making, using, selling, or offering to sell the accused products.

the "[p]laintiff must delineate which specific claims are asserted against which specific defendants").

Although "group pleadings may be appropriate if the defendants are similarly situated," generally "a complaint that repeatedly refers to defendants collectively, without differentiation, is more likely to run afoul of the plausibility standard of Iqbal and Twombly." *See E-Vision Optics, LLC v. Luxottica Grp. S.p.A.*, 2024 WL 1601853, at *4 (C.D. Cal. Mar. 8, 2024). Here, the Defendants are three legally distinct entities, and Plaintiff has offered no reason to treat them as one. The FAC simply glosses over any distinction between Defendants, identifying no specific accused products or specific accused actions. This violates the whole point of pleadings—to contain specific enough allegations against each defendant to give "notice of which product is accused, and how [defendants] infringe." *See Resonant Sys., Inc. v. Sony Grp. Corp.*, No. 2:22-CV-424-JRG, 2023 WL 5723646, at *2 (E.D. Tex Sept. 5, 2023). Without these specific allegations, Defendants "cannot reasonably determine the allegations against [them] or what the accused instrumentalities or activities are that allegedly infringe the patents-in-suit." *See Phoenix Licensing, LLC v. Alliance Data Sys. Corp.*, 2012 WL 12896398, at *3 (E.D. Tex. May 1, 2012). The FAC, therefore, should be dismissed.

### 2.    Regardless, BAC is not a proper party to this litigation.

With respect to BAC, Plaintiff now recognizes that it is simply "a holding company" and again only accuses products and services of BAC's ***legally distinct subsidiaries***. Dkt. 34 ¶¶ 2, 19 (accusing "web and mobile applications for all Bank of America affiliates (*e.g.*, Merrill Lynch)"). This alone is reason enough to dismiss Plaintiff's allegations against BAC. *See Slyde Analytics, LLC v. Zepp Health Corp.*, 2024 WL 4501979, at *1 (E.D. Tex. Aug. 28, 2024) (explaining that a court must "find no infringement" where the defendant "is only a holding company and has not

sold or imported the accused devices"). Additionally, the home page of bankofamerica.com[2] that the FAC cites confirms that BAC offers no products and services, explaining that: (i) "[s]ecurities products are provided by *Merrill Lynch, Pierce, Fenner & Smith Incorporated* . . . [,] *a wholly-owned subsidiary of Bank of America Corporation*"; (ii) "[t]rust and fiduciary services are provided by *Bank of America, N.A.* . . . [, an] *indirect subsidiar[y] of Bank of America Corporation*"; and (iii) "*[b]anking, credit card, automobile loans, mortgage and home equity products are provided by Bank of America, N.A.*"

The mere fact that BANA and Merrill are subsidiaries of BAC does not mean that BAC is automatically liable for their actions. *See Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1128–29 (Fed. Cir. 2021) ("[M]ere ownership of a subsidiary does not justify the imposition of liability on the parent." (internal citation omitted)). In fact, "it is well-settled law that, absent a piercing of the corporate veil[,] . . . a parent company is not liable for the acts of its subsidiary." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1349 (Fed. Cir. 2010). It is therefore wholly unclear what products or services Plaintiff accuses that belong to BAC, as compared to what would belong to its affiliates such as BANA or Merrill. And Plaintiff alleges no piercing of the corporate veil here; thus, BAC is not a proper party to this litigation.

Because BANA and Merrill are legally distinct entities from BAC and Plaintiff fails to state any factual allegations against BAC plausibly supporting infringement, its allegations against BAC should be dismissed under Rule 12(b)(6). *See Charboneau v. Box*, 2017 WL 1159765, at *8 (E.D. Tex. Mar. 29, 2017) ("Failure to 'put forward . . . concrete allegations' against a defendant

---

[2] Because Plaintiff repeatedly references the bankofamerica.com website in its FAC, the Court is permitted to rely on it in deciding the motion to dismiss. *See Hereford v. Carlton*, 2016 WL 7042230, at *4 (E.D. Tex. Mar. 16, 2016).

and '[pleading] no facts that could possibly indicate that [a defendant] may be liable' merits dismissal under Rule 12(b)(6)." (internal quotation omitted)).

**B. Plaintiff fails to state a claim of direct infringement.**

The FAC only identifies Claim 11 of the '262 Patent as directly infringed. Dkt. 34 ¶ 24. Claim 11 covers "[a] method of restricting access to data maintained on a server computer by an authorized client machine," including the following limitations:

> 11. A method of restricting access to data maintained on a server computer by an authorized client machine, said method comprising the steps of:
>
> a. creating a session identifier in a computer remote from the client machine for a current browsing session of the client machine;
>
> b. transmitting to the client machine the session identifier created in step a.;
>
> c. storing the session identifier transmitted in step b. within the client machine;
>
> d. verifying, on the client machine, that the client machine is authorized to access data maintained on the server computer;
>
> e. obtaining the session identifier stored in step c., and storing such session identifier within a storage table remote from the client machine if such client machine was verified in step d.;
>
> f. transmitting a request by the client machine for access to data maintained on the server computer, such request including the session identifier stored in step c.;
>
> g. comparing the session identifier transmitted in step f. with the session identifier stored in the storage table during step e. to determine whether the request for access transmitted in step f. is authorized; and
>
> h. permitting access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is authorized, and denying access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is not authorized.

'262 Patent at 13:37–14:3.

Plaintiff's discussion of direct infringement of Claim 11 in the FAC does little more than parrot the claim language, simply breaking out the elements of the claims and prepending language to the effect of "the accused products practice a method." *See NorthStar Sys. LLC v. Volkswagen AG*, No. 2-22-cv-00486-JRG, 2023 WL 5723648, at *3 (E.D. Tex. Sept. 5, 2023). An infringement claim must provide sufficient detail to place the accused infringer on notice of the nature of the alleged infringement. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) ("[A] plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content."); *see also Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-CV-325-JRG, 2016 WL 9275395, at *3 (E.D. Tex. Oct. 19, 2016) ("To state a claim for direct infringement, a plaintiff must ***explicitly plead facts*** to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" (quoting 35 U.S.C. § 271(a)) (emphasis added)). Here, Plaintiff's claims lack such detail. Even though Plaintiff walks through each limitation of Claim 11, it does not do so with plausible factual allegations. Instead, as in *Chapterhouse*, Plaintiff merely provides screenshots without an explanation of "how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met." *See Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018).

In particular, Plaintiff makes conclusory allegations but fails to allege facts to plausibly support (1) Plaintiff's improper lumping together of all accused products in its infringement allegations, much less how Plaintiff's one example (the "'Bank of America Mobile Banking' application for iOS and Android") acts as a representative product for any other purportedly accused product; (2) how the accused products verify that the client machine is authorized to

11

access data maintained on the server computer per step d.; (3) how the accused products store the session identifier both within the client machine per step c. and remote from the client machine per step e.; (4) what or how the purported session keys of the accused products are compared or whether such comparison allows for authorized access as required by steps g. and h.; and (5) how each Defendant performs every step of the claimed method.

### 1.  Plaintiff fails to give sufficient notice of what product or products infringe.

Plaintiff fails to identify the accused products with sufficient specificity, much less provide facts that plausibly support infringement by *each* of the "web and mobile applications for all Bank of America affiliates." Plaintiff's lack of factual allegations about its broad characterization of the accused products demonstrates that Plaintiff cannot plausibly allege infringement of each and every accused product/service. It would instead like to cast a wide net covering and grouping together all products and services of BAC's subsidiaries—specifically stating that it includes "at least *all* versions and variants of the Bank of America Web and Mobile Applications, including web and mobile applications for all Bank of America affiliates (*e.g.*, Merrill Lynch) since 2018." Dkt. 34 ¶ 19 (emphasis added). Conclusory allegations such as these are "insufficient to identify what products infringe [and] . . . fail to 'place [Defendant] on notice of what activity . . . is being accused of infringement.'" *See Golden v. Intel Corp.*, 2023 WL 3262948, at *2 (Fed. Cir. 2023) (internal quotation omitted). This dooms Plaintiff's infringement claims. *See Lemko Corp. v. Microsoft Corp.*, 2024 WL 3798217, at *5 (N.D. Tex. July 29, 2024) (finding that "collectively referencing the Accused Products without sufficient allegations tied to each Accused Product do[es] not plausibly plead direct infringement").

The "touchstone [for sufficient identification of accused products], however, is not whether [] the plaintiff has 'identif[ied] an accused device by name,'" but whether the plaintiff pleads enough facts for notice and plausibility, depending on "the breadth and complexity [of the accused

products] and on the nature of the defendant's business activities." *See PanTaurus LLC v. Wells Fargo & Co.*, 2015 WL 11110601, at *2 (E.D. Tex. Mar. 11, 2015) (internal quotation omitted). Here, Plaintiff's vague citations to a single named product—"the 'Bank of America Mobile Banking' application for iOS and Android" (Dkt. 34 ¶ 23)—(as explained further below), provide no notice for how ***all*** of BAC's subsidiaries' web and mobile applications allegedly infringe. *See PanTaurus*, 2015 WL 11110601, at *2. This neglect to differentiate between the particular products in this group (i.e., how ***each*** purportedly infringes) or establish a representative product (i.e., an exemplary product with the same functionality as the rest of the group) is fatal to Plaintiff's claims. *See Nichia Corp. v. VIZIO, Inc.*, No. 2:16-CV-1453-JRG, 2017 WL 3836141, at *2 (E.D. Tex. July 24, 2017) (noting that the plaintiff cannot "accuse[] a vague category of products of infringing without providing any additional context as to the scope or features of the accused products"). A court cannot make a reasonable inference that "all of [the accused products] infringe in the same manner" with such a complete absence of support for how the accused products operate similarly. *See Cywee Grp. Ltd. v. Huawei Device Co.*, 2018 WL 3819392, at *5 (E.D. Tex. Aug. 10, 2018). This is more so here because Defendants are three separate entities that each offer different products and services (or in BAC's case, offer no products or services). *See Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538, 543 (E.D. Tex. June 10, 2010) (requiring "that identification of accused instrumentalities be specific as to particular defendants"). Plaintiff's claim should therefore be dismissed.

### 2. Plaintiff does not allege how the accused products verify, on the client machine, that the client machine is authorized to access data maintained on the server computer as required by step d.

Plaintiff does not plausibly allege the requirements of step d. of Claim 11 in its FAC. Step d., which requires "verifying, on the client machine, that the client machine is authorized to access data maintained on the server computer," is focused on ***verification of the client machine***. '262

13

Patent at 13:47–49; *see* Dkt. 34 ¶ 30. The specification emphasizes the distinction between verifying that a client machine, rather than a user, is authorized to access data maintained on a server computer. *Compare* '262 Patent at 1:63–67 (An "object of the present invention is to provide such an authentication system capable of restricting a client to *a particular personal computer or other client machine* in order to gain access." (emphasis added))*, with id.* at 2:5–12 ("An additional object of the present invention is to provide such an authentication system *that eliminates the need* for the server administrator to store, or administer, *user names, passwords or other <u>user</u> authentication data*." (emphases added)).

The '262 Patent then goes on to describe a procedure for verifying that a client machine is authorized—a "unique password" is derived from a "client machine-specific identifier," which is determined based on "*particular characteristics* of the *particular computer or other client machine* upon which such client-side software program is installed." *Id.* at 2:32–45 (emphases added). "When a user desires access to data maintained on the server computer, the client-side software re-generates its machine-specific identifier," and "[a] comparison is then made, preferably by the client-side software itself, to compare the re-generated machine-specific identifier to the unique password saved by the user in the client machine." *Id.* at 2:59–64. If the two match, then "the client-side software recognizes the client machine as being authorized to access data maintained on the server computer." *Id.* at 2:64–3:7. Plaintiff emphasized in the prosecution of the '262 Patent that the verification step (step d.) in Claim 11[3] is performed by "client-side software on the client machine," by "re-generating the machine-specific identifier and comparing it to the unique password saved by the user in the client machine." *See* Ex. B ('262

---

[3] U.S. Patent App. No. 10/139,924 (the "'924 App.") issued as the '262 Patent. *See* '262 Patent at (21). Claim 14 as originally submitted in the '924 App. issued as Claim 11 of the '262 Patent. *See* Ex. C ('262 Patent File History, May 6, 2002, Originally Filed Application) at 23–24.

Patent File History, Feb. 6, 2006, Applicant Argument/Remarks Made in an Amendment) at 8–9. The Court has wide latitude to consider the proper construction of the "verifying" step based on intrinsic evidence in deciding a motion to dismiss. *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 993 (Fed. Cir. 2024).

Plaintiff does not allege any facts that plausibly support infringement of verification of the client machine. *See* Dkt. 34 ¶ 30. Instead, the FAC conflates client machine verification, which Claim 11 requires, with verification based on user-specific information, which is not relevant to Claim 11. *See id.* Plaintiff begins by setting up a situation where (1) "the client machine supports Apple Touch / Face ID" and (2) "the Bank of America Mobile Application has been provisioned to sign in to Bank of America online services via Touch / Face ID." *Id.* Once both of those prerequisites are met, then, Plaintiff believes that "Bank of America computer code automatically prompts the operator to sign in via Touch / Face ID immediately after the application is launched." *Id.* Plaintiff goes on to cement that this purported series of steps verifies the ***user*** by adding that "[t]he identity of the user is then verified on [the] client machine, and the client machine sends that acknowledgement to the Bank of America online service." *Id.*

But, even if Plaintiff's assumptions were true, verification of a user's biometrics is not ***verification of the client machine***. Apple Touch / Face ID do not verify the client machine. Indeed, Plaintiff acknowledges that Apple Touch / Face ID provide access to the operator, not the client machine. *See id.* ¶ 25 ("[O]ne method by which an ***operator*** may sign in to access Bank of America's 'protected URLs,' as a Bank of America account holder, is via Apple's Touch and Face ID." (emphasis added)). Because at least steps e., g., and h. depend from step d., Plaintiff's pleading failure renders its allegations against steps e., g., and h. implausible as well. "[T]he Court need not accept as true conclusory allegations and allegations contradicted by other allegations

15

within Plaintiff's own complaint." *Nichia*, 2017 WL 3836141, at *1. Accordingly, Plaintiff's claim should be dismissed.

### 3. Plaintiff does not allege how the accused products store the session identifier both within and remote from the client machine as required by steps c. and e.

Plaintiff does not allege facts that plausibly support infringement of steps c. and e. of Claim 11. Step c. of Claim 11 requires the session identifier be stored "***within the client machine***." '262 Patent at 13:45–46 (emphasis added); *see* Dkt. 34 ¶ 29. Plaintiff asserts that the "***web browser*** stores the session identifiers(s) on the client machine." Dkt. 34 ¶ 29 (emphasis added). This conclusory assertion, however, is inconsistent with Plaintiff's factual allegations. Despite starting with the claim that "Bank of America Web and Mobile Applications" perform every step of Claim 11 (including step c.) (*see id.* ¶¶ 23–24), a mere few paragraphs later, the FAC alleges that the "web browser" actually performs this step. *Id.* ¶ 29.  Plaintiff supports this allegation with the following irrelevant screenshot from bankofamerica.com:



*Id.* The provided screenshot nowhere discusses session IDs, and instead only discusses what bankofamerica.com ***collects from*** the client machine, not what bankofamerica.com ***stores on*** the client machine. Merely parroting the claim language and appending irrelevant screenshots without explanation is insufficient to allege direct infringement. *See NorthStar*, 2023 WL 5723648, at *3.

Further, step e. requires "***obtaining***" that same session identifier stored in step c. and storing the identifier "within a storage table ***remote from the client machine***." '262 Patent at 13:45–53 (emphases added); *see* Dkt. 34 ¶¶ 29–31. Plaintiff alleges that "the Bank of America ***Web and Mobile Applications***, after verification of the user, sends the unique session identifier stored in step c to a remote Bank of America storage table storing session identifier(s). For example, upon information and belief, the Bank of America Mobile Application further obtains session identifiers associated with a login such as static or dynamic session ID, token, and/or

17

certificate." Dkt. 34 ¶ 31 (emphasis added). This allegation is unaccompanied by any factual support other than the inclusion (without explanation) of the following screenshot:



*Id.* Plaintiff fails to explain how this screenshot shows storage of ***the same session identifier stored in step c.*** in a location ***remote from the client machine***. In fact, the information in the table appears to contradict Plaintiff's allegations. First, per the FAC, step c. requires "the web browser" to store a session ID on the client machine. *Id.* ¶ 29. In this screenshot, the "web browser" would presumably be the "Firefox browser" on a "Computer." Then, the FAC alleges in step e. that the "Bank of America Web and Mobile Applications" must, after verification of the user, obtain the ***same*** session ID stored in step c. and store that session ID in a remote storage table. *Id.* ¶ 31. In the screenshot, however, the only "application" shown is a "Bank of America app" on a "iPhone with Touch ID / Face ID." And there are two distinct devices—the "Computer" and the "iPhone." But the FAC fails to explain how this comports with the requirement that the ***same*** session ID is obtained by the client machine. Tracking Plaintiff's allegations in the FAC, the screenshot alone suggests that the "Bank of America app" on a "iPhone with Touch ID / Face ID" (step e.) would need to obtain a session ID stored in the "Firefox browser" on a "Computer" (step c.), which does

18

not make any sense. Without further explanation, then, this screenshot clearly cannot support Plaintiff's allegations for step e. Such inconsistent and vague allegations "subject [Plaintiff's] claims to early dismissal." *Bot M8*, 4 F.4th at 1346.

In sum, Plaintiff's allegations fail to plausibly allege storage of the session ID in two different places per steps c. and e. of Claim 11. Plaintiff's claims therefore should be dismissed.

### 4. Plaintiff does not allege what or how the purported session keys of the accused products are compared or whether such comparison allows for authorized access as required by steps g and h.

The factual support for infringement of steps g. and h. of Claim 11 is also lacking in the FAC. Step g. requires "***comparing the session identifier*** transmitted in step f. with the session identifier stored in the storage table during step e. to ***determine whether the request for access transmitted in step f. is authorized***." '262 Patent at 13:57–60 (emphases added); *see* Dkt. 34 ¶ 33. Then, based on whether "the request for access is authorized," step h. requires either permitting or denying "access by the client machine to the requested data maintained on the server computer." '262 Patent at 13:61–14:3; *see* Dkt. 34 ¶ 34. Yet, Plaintiff only summarily addresses this comparison and the corresponding permitting or denying of access. *See* Dkt. 34 ¶¶ 33–34.

Specifically, Plaintiff apparently alleges that step g. is met through the general concept of session cookies. *Id.* ¶ 33 ("[W]hen session cookies (which store session identifiers(s)) are deleted from the client machine, the client machine is no longer logged in and no longer able to access Bank of America 'Protected URLs.'"). But this allegation does not plausibly allege how the comparison required by step g. occurs or how authorized access is determined. It simply states without basis that "Bank of America servers supporting the Bank of America Mobile and Web Applications compare the session identifier to the one stored in a storage table to identify whether the request for access (e.g., to a bank account) is authorized (e.g., whether the user is logged in based on a username and password and/or biometric information presented to the Web or Mobile

Application).” *Id.* Merely equating login of the user to authorized access skips over the requirement of a ***comparison***, particularly with respect to the situation where authorized access is denied. Plaintiff only alleges that authorized access is denied when “the client machine is not signed in.” *Id.* ¶ 34. But, if the client machine is not signed in, there could be no comparison, as none of the prior steps of Claim 11 would have occurred. This contradiction alone makes Plaintiff's allegations implausible, and thus, Plaintiff's claims should be dismissed.

### 5. Plaintiff fails to plead that Defendants perform every claimed method step.

Direct infringement for method claims requires that “***all*** steps of a claimed method are performed by or attributable to a ***single*** entity.” *See Lone Star Tech. Innovations, LLC v. Asustek Comput. Inc.*, 2020 WL 6803249, at *3 (E.D. Tex. Jan. 14, 2020) (emphases added). Therefore, “to adequately state a claim for direct infringement of a method claim, the complaint must allege that the accused infringer performed each step of the claimed method.” *LBS Innovations, LLC v. Nokia USA Inc.*, No. 2:15-CV-1972-JRG, 2016 WL 3407611, at *2 (E.D. Tex. June 21, 2016). Plaintiff's allegations, however, require steps of Claim 11 to be performed by ***entities other than Defendants***. As a result, the FAC must sufficiently allege facts supporting divided infringement. *See Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-CV-49-JRG, 2024 WL 4870768, at *3–4 (E.D. Tex. Nov. 21, 2024) (“[T]o meet the pleading standard for divided infringement . . . , the complaint must plead ‘facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite “direction and control” over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party.’” (internal citation omitted)). Because the FAC fails to do so, Plaintiff's direct infringement allegations cannot stand.

For example, step c. of Claim 11—“storing the session identifier . . . within the client machine”—requires the client machine to store the session identifier. ’262 Patent at 13:45–46.

The FAC alleges that "the ***web browser***" on the client machine stores the session identifier on the client machine. Dkt. 34 ¶ 29 (emphasis added). But Defendants do not supply client machines to customers or the "web browser" on such client machines. As another example, step d. of Claim 11 requires "verifying, on the client machine . . . ." '262 Patent at 13:47–49. Plaintiff pleads that this verification occurs when third-party biometrics, i.e., "***Apple*** Touch / Face ID" verify the "identity of the user." Dkt. 34 ¶ 30 (emphasis added). But Defendants do not supply Apple devices that contain "Apple Touch / Face ID" to their customers. Therefore, for both steps c. and d., the FAC itself admits that performance of the claimed steps requires actions taken by the "web browser" and "Apple Touch / Face ID" features of a third-party machine, yet Plaintiff fails to plead a divided infringement theory. Plaintiff's conclusory claim that these actions occur per instructions from "Bank of America servers and/or Bank or America computer code" does not allege facts that plausibly show that any Defendant directs or controls these third-party functionalities. *See Mullen*, 2024 WL 4870768, at *3. Plaintiff's direct infringement claims, thus, should be dismissed for this reason as well.

### C.  Plaintiff also fails to state a claim of pre-suit indirect infringement.

Because Plaintiff fails to adequately plead direct infringement, its indirect infringement claims cannot survive. *See In re Bill of Lading*, 681 F.3d 1323, 1333 (Fed. Cir. 2012). But even if Plaintiff's claims of direct infringement were sufficient, Plaintiff still fails to state a claim of indirect infringement. To state an indirect infringement claim, the patent owner must plead facts (a) sufficient to allow an inference that at least one direct infringer exists and (b) plausibly showing that the accused infringer induced or contributed to the alleged infringement. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355–56 (Fed. Cir. 2018). Further, to survive a motion to dismiss, allegations of indirect infringement "must include some factual support that would allow this Court 'to draw [a] reasonable inference that [Defendant] is liable for the misconduct alleged.'"

*See Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, 2013 WL 12153575, at *3 (E.D. Tex. Mar. 25, 2013) (quoting *Iqbal*, 556 U.S. at 678). Here, Plaintiff pleads no facts to show that any Defendant induced or contributed to the alleged infringement. Dkt. 34 ¶¶ 35–37. Plaintiff's FAC "merely repeats the exact language from the statute without adding any factual allegations," which is unmistakable grounds for dismissal. *See Nobelbiz, Inc. v. Insidesales.com, Inc.*, 2014 WL 12378804, at *4 (E.D. Tex. Oct. 14, 2014).

To plead a claim of either inducement or contributory infringement, the patent owner must allege plausible facts showing the accused infringer knew of the asserted patent. *Nalco Co.*, 883 F.3d at 1355–56. Here, because the Asserted Patent expired before the filing of the Complaint, Plaintiff cannot rely on the receipt of the Complaint (or FAC) as establishing the requisite knowledge. Inducement additionally requires showing that the accused infringer (a) knowingly induced the infringing acts and (b) had specific intent to encourage another's infringement of the patent. *Id.* at 1355. Starting with knowledge of the patent, Plaintiff alleges that:

> Defendants had direct knowledge of the '262 Patent as evident from the fact that Defendants cited the '262 Patent during prosecution of application 12/845,881. Additionally, Defendants also cited to the '262 Patent's priority application during the prosecution of applications 13/097,828 and 12/845,881, and U.S. Patent No. 9,026,991.

Dkt. 34 ¶ 36. On top of being inaccurate, these allegations are insufficient to show knowledge of the patent for any Defendant. First, Plaintiff mischaracterizes the prosecution history of the cited applications in its allegation that "Defendants cited" the '262 Patent and its priority application. In

reality, the examiner, and not the applicant, only ever cited to the Asserted Patent.[4] But citation of the '262 Patent during prosecution of BAC patent applications does not automatically mean any Defendant had knowledge. *See DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016) (finding that "no plausible inference arises from the alleged facts that defendant had knowledge of the [asserted] patent" by it being listed in an IDS during prosecution of defendant's patent application); *Dali Wireless Inc. v. Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088 (N.D. Cal. 2022) (finding that citations to the asserted patent in defendant's patents does not plausibly show "knowledge of the substance of each and every patent cited during patent prosecution," even where defendant's in-house counsel was the counsel of record on defendant's patents). And the applicant's citations to the ***published application***, not the ***issued patent***, are without more, insufficient to allege knowledge of the Asserted Patent. *See Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-CV-126-JRG-RSP, 2022 WL 4587554, at *3 (E.D. Tex. Sept. 8, 2022) ("It is true that 'knowledge of a patent application alone is insufficient to demonstrate knowledge of a later issued patent.'" (citation omitted)); *see also Network Sys. Techs., LLC v. Qualcomm Inc.*, 2023 WL 11833572, at *7 (W.D. Tex. July 21, 2023) (finding "reference to a patent application, even a published one, is often irrelevant to knowledge of the patent" without additional allegations). This is especially true here, where Claim 11 (then Claim 14) was amended after

---

[4] For example, (1) in U.S. Pat. App. No. 12/845,881 (the "'881 App."), the examiner cited to the '262 Patent and its publication in a "Notice of References Cited"; (2) in U.S. Pat. App. No. 13/097,828 (the "'828 App."), the examiner again cited to the publication in a "Notice of References Cited" and then issued a rejection based on the publication—to which the applicant responded; and (3) in U.S. Pat. No. 9,026,991 (the "'991 Patent"), the applicant cited to the publication in an IDS. *See* Ex. D ('881 App. File History, Oct. 19, 2012, Notice) at 1; Ex. E ('828 App. File History, Oct. 5, 2012, Notice) at 1; Ex. F ('828 App. File History, Oct. 5, 2012, Non-Final Rejection) at 2–11; Ex. G ('828 App. File History, Nov. 27, 2012, Applicant Argument/Remarks Made in an Amendment) at 1–4; Ex. H ('991 Patent File History, Nov. 21, 2013, IDS) at 1.

publication. *See Meetrix IP, LLC v. Cisco Sys., Inc.*, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018) (explaining that "it is a patent's *claims* that put potential infringers on notice, not the specification" because "the scope of claims in patents that do issue . . . is something totally unforeseeable").

Further, the '881 App., '828 App., and '991 Patent are all assigned to BAC. Thus, even if Plaintiff adequately pleads knowledge of the patent (it does not), Plaintiff's allegations only apply to BAC. The FAC fails to plausibly allege that BANA and Merrill had knowledge of the Asserted Patent other than alleging the mere existence of a parent-subsidiary relationship. This allegation, however, is insufficient to impute knowledge onto BANA and Merrill. *See Xiros, Ltd. v. Depuy Synthes Sales, Inc.*, 2022 WL 3592449, at *3 (W.D. Tex. Aug. 22, 2022) ("'[T]he bare facts of the parent/subsidiary relationship' are insufficient to impute knowledge from one company to another."); *see also ZitoVault, LLC v. IBM Corp.*, 2018 WL 2971131, at *3 (N.D. Tex. Mar. 29, 2018) ("Knowledge of a patent by a parent corporation is not necessarily imputed to its subsidiary.").

As far as specific intent, Plaintiff only broadly asserts induced infringement through the following phrase: "with the intent . . . that the induced acts directly infringe the '262 Patent." Dkt. 34 ¶ 36. But Plaintiff alleges *no* specific facts to support that Defendants had the specific intent to encourage another's infringement of the patent. *Id.* Specific intent cannot be pled in such a skeletal way. *See Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 830–35 (E.D. Tex. 2019). Instead, it requires the plaintiff to point to "[e]vidence of active steps taken to encourage direct infringement." *Id.* at 828. Plaintiff only vaguely accuses Defendants of "providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product

manuals, advertisements, and online documentation." Dkt. 34 ¶ 36. This Court has held nearly identical allegations insufficient. See *NorthStar*, 2023 WL 5723648, at *3 ("There should be more corresponding factual allegations in the Complaint to provide [defendant] with adequate notice."); *see also Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) ("[G]eneric allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim.").

And while allegations of willful blindness can satisfy this requirement, they must be well pled to do so. *See Motiva Pats.*, 408 F. Supp. 3d at 833–34 (requiring that plaintiff "sufficiently alleged a factual basis for willful blindness" to survive a motion to dismiss, such as the existence of a "willfully-blind policy"). Plaintiff's rote and conclusory willful blindness allegations—that "Defendants perform these affirmative acts with . . . willful blindness"—are without a doubt not well pled. Dkt. 34 ¶ 36; *see Nonend Inventions, N.V. v. Apple Inc.*, No. 2:15-CV-466-JRG-RSP, 2016 WL 1253740, at *2 (E.D. Tex. Mar. 11, 2016) ("The Court only finds that [plaintiff] has not alleged facts, if taken as true, that are sufficient to show that [defendant] was 'willfully blind' to the Asserted Patents."); *see also infra* Section IV.D (discussing failure to sufficiently plead willful blindness). In particular, Plaintiff's allegations that Defendants were willfully blind to any potential infringement of the '262 Patent are nonexistent. Plaintiff does not offer any reason to assume that Defendants had either a subjective belief they were infringing or took "active efforts" to avoid knowing they were infringing. This is fatal to an attempt to plead willful blindness. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (Fed. Cir. 2011) (requiring "active efforts by an inducer to avoid knowing about the infringing nature of the activities"); *see also Helios Streaming, LLC v. Vudu, Inc.*, 2021 WL 254069, at *7 (D. Del. Jan. 26, 2021) (finding no

pre-suit knowledge of infringement where instead of pleading "active efforts" as required by *Global-Tech*, the complaint only concluded that the defendant "actively avoided knowing of the infringement without alleging facts supporting reasonable inferences that would permit such a conclusion").

Plaintiff also pleads contributory infringement in conclusory fashion. Dkt. 34 ¶ 37. Contributory infringement also requires both knowledge of the patent and knowledge of the purported infringement. *Nalco Co.*, 883 F.3d at 1356. Thus, the patent owner must plead facts to plausibly show that the accused infringer had knowledge that a component of a patented product or process was especially made or adapted for infringing use. *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021). Mere rote recitation that an accused product is not suitable for substantial non-infringing use is insufficient. *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1047 (N.D. Cal. 2022). Yet Plaintiff does just that, vaguely alleging that the "accused components within the Accused Products are material to the invention of the '262 Patent, are not staple articles or commodities of commerce, [and] have no substantial non-infringing uses" without any supporting facts. Dkt. 34 ¶ 37. This is not enough. *See Core Wireless*, 2015 WL 4910427, at *5 ("[Plaintiff] does not identify the general functionality of the respective patents, the hardware and/or software components it accuses, or how those components are material and especially adapted for infringement. Moreover, with such a lack of clarity and specificity, it is impossible to derive a plausible inference that the accused hardware/software has no substantial non-infringing uses.").

Therefore, in addition to insufficiently pleading direct infringement, Plaintiff fails to sufficiently plead both inducement and contributory infringement, and its indirect infringement claims must be dismissed. *See Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-CV-207-JRG, 2024

WL 4980794, at *4 (E.D. Tex. Dec. 3, 2024) (dismissing indirect infringement claims where complaint failed to provide "a plausible, constructive showing that there existed a level of knowledge and understanding adequate to cause a reasonable person to question their continued use of the plaintiff's invention").

### D. Plaintiff does not sufficiently plead pre-suit willful infringement.

Given that the '262 Patent expired prior to the filing of this lawsuit, the only possible willful infringement allegations that could be asserted here would be for pre-suit willful infringement. Plaintiff's FAC, though, includes no allegations or facts concerning pre-suit willful infringement, only requesting in its Prayer for Relief a "judgment declaring that Defendants' infringement of the '262 Patent is willful." Dkt. 34 at 22. This goes against the clear letter of the law. *See Opticurrent, LLC*, 2016 WL 9275395, at *2 (finding plaintiff "has failed to state a claim upon which relief can be granted for willfulness" because "entirety of [plaintiff's] willfulness allegations in its Complaint are limited to a single statement contained in the Prayer"); *see also Realtime Data LLC v. EchoStar Corp.*, 2017 WL 4693512, at *5 (E.D. Tex. July 19, 2017).

For claims of pre-suit willful infringement, Plaintiff must plausibly allege that Defendants knew of the Asserted Patent. *See Plano Encryption Techs., LLC v. Alkami Tech., Inc.,* No. 2:16-CV-1032-JRG, 2017 WL 8727249, at *2 (E.D. Tex. Sept. 22, 2017). As discussed above (*see* Section IV.C), Plaintiff's allegations are insufficient to establish pre-suit knowledge of the '262 Patent for any Defendant. *See Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-CV-172-JRG, 2022 WL 610796, at *7 (E.D. Tex. Jan. 24, 2022) (Without "facts in the Complaint to suggest that [Defendants] had pre-suit knowledge of the [Asserted] Patent," plaintiff "has failed to state a claim for pre-suit willful infringement.").

Moreover, the FAC contains no allegations of knowledge of infringement either. *See Fractus, S.A. v. TCL Corp.*, No. 2:20-CV-97-JRG, 2021 WL 2483155, at *4 (E.D. Tex. June 2,

2021) (dismissing pre-suit willful infringement claims where plaintiff failed to "allege any culpable conduct or any set of facts supporting an inference of culpable conduct" (i.e., knowledge of infringement), despite sufficiently pleading knowledge of the patents); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (explaining that knowledge of infringement and knowledge of the patent "are distinct elements" and must each be pled with supporting factual allegations); *Dynamic Data Techs. v. Google LLC*, 2020 WL 1285852, at *2 (D. Del. Mar. 18, 2020) ("[E]ven assuming that it *is* plausible that as of September 2018, [defendants] somehow knew of the existence of each of the patents-in-suit, Defendants' Motion would still be well-taken—since the Complaint does not contain plausible allegations that [defendants] would then have known that *it was infringing* each of the patents-in-suit."). Indeed, Plaintiff's allegations suggest the opposite, as BAC's patents were granted over the citations to the '262 Patent and its publication. And Plaintiff offers no connection between the citations and the accused products to support knowledge of infringement. *See MasterObjects, Inc. v. Amazon.com, Inc.*, 2021 WL 4685306, at *4–6 (N.D. Cal. Oct. 7, 2021).

Further, Plaintiff's inclusion of "willful blindness" is a nonstarter. Plaintiff merely throws that term in as a catch-all, but, for a charge of willful blindness to pass muster, "a plaintiff must plausibly plead that the defendant (1) subjectively believed that there is a high probability that a fact exists [i.e., the existence and potential infringement of the '262 Patent], and (2) took deliberate action to avoid learning of that fact." *See Signode Indus. Grp. LLC v. Samuel, Son & Co.*, No. 2:24-CV-80-JRG, 2024 WL 3543408, at *4 (E.D. Tex. July 25, 2004). "A complaint that fails to identify any affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief based on the willful blindness theory." *Script Security Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016). Similarly,

a complaint that fails to identify any affirmative actions to avoid actual knowledge of infringement is also deficient. There must be "a level of knowledge and understanding adequate to cause a reasonable person to question their continued use of the plaintiff's invention." *Dialect*, 2024 WL 4980794, at *3. Here, Plaintiff includes "no facts [to] suggest that [defendant] could subjectively believe that there was a high probability that it would infringe the claims in the Asserted Patents" nor any facts supporting actions taken by Defendants to avoid such knowledge; thus, the pre-suit willfulness claim should be dismissed. *Nonend*, 2016 WL 1253740, at *3 (granting failure to dismiss pre-suit willful infringement). In fact, Plaintiff's failure to even try to make such allegations "is dispositive." *See Dialect*, 2024 WL 4980794, at *3. Therefore, any willful infringement claim should be dismissed.

## V.    CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court dismiss Plaintiff's FAC with prejudice for failure to state a claim.

Date: February 5, 2025                    Respectfully submitted,

                                          */s/ Dustin J. Edwards*

                                          Dustin J. Edwards
                                          Texas State Bar No. 24042335
                                          Email: DEdwards@winston.com
                                          Olivia A. Wogon
                                          Texas State Bar No. 24137299
                                          Email: OWogon@winston.com
                                          Michelle N. Toro
                                          Texas State Bar No. 24137246
                                          Email: MToro@winston.com
                                          **WINSTON & STRAWN LLP**
                                          800 Capitol St., Suite 2400
                                          Houston, TX 77002-5242
                                          Phone: (713) 651-2600
                                          Facsimile: (713) 651-2700

                                          E. Danielle T. Williams
                                          North Carolina Bar No. 23283
                                          Email: DWilliams@winston.com
                                          Richard H. Quarles
                                          North Carolina Bar No. 60684
                                          Email: RQuarles@winston.com
                                          **WINSTON & STRAWN LLP**
                                          300 S. Tryon Street, 16th Floor
                                          Charlotte, NC 28202
                                          Phone: (704) 350-7700
                                          Facsimile: (704) 350-7800

                                          Christopher T. Gresalfi
                                          New York Bar No. 5472121 (PHV)
                                          Email: CGresalfi@winston.com
                                          **WINSTON & STRAWN LLP**
                                          200 Park Avenue
                                          New York, NY 10166-4193
                                          Phone: (212) 294-6700
                                          Facsimile: (212) 294-4700

                                          Kyle Lee Dockendorf
                                          Texas State Bar No.: 24136811
                                          Email: KDockendorf@winston.com
                                          **WINSTON & STRAWN LLP**
                                          2121 N. Pearl Street, Suite 900
                                          Dallas, TX 75201
                                          Phone: (214) 453-6500

Facsimile: (214)453-6400

Brian L. O'Gara
Illinois State Bar No. 6342669
Email: BOGara@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Phone: (312) 558-5600
Facsimile: (312) 558-5700

*Counsel for Defendants,*
*Bank of America Corporation,*
*Bank of America, N.A., and*
*Merrill Lynch, Pierce, Fenner & Smith, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above document was

served on all counsel of record via the Court's ECF system on February 5, 2025.

<u>/s/ Dustin J. Edwards</u>
Dustin J. Edwards
