# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| BROWSERKEY, LLC, | § | Case No. 2:24-cv-00800-JRG-RSP |
| | § | (Lead Case) |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| WELLS FARGO, N.A., | § | |
| | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| BROWSERKEY, LLC, | § | Case No. 2:24-cv-00798-JRG-RSP |
| | § | (Member Case) |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| BANK OF AMERICA CORPORATION, | § | |
| BANK OF AMERICA, NATIONAL | § | |
| ASSOCIATION, and | § | |
| MERRILL LYNCH, PIERCE, FENNER & | § | |
| SMITH INCORPORATED, | § | |
| | § | |
| Defendant Defendants. | § | |

### AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff BrowserKey, LLC ("BrowserKey" or "Plaintiff") for its Amended Complaint

against Bank of America Corporation ("BOAC"), Bank of America, National Association

("BANA"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch")

(collectively, "Bank of America" or "Defendant")Defendants"), alleges as follows:

### THE PARTIES

1.     BrowserKey is incorporated under the laws of the State of Texas, with a place of

business located at 101 East Park Boulevard, Suite 600, Plano, Texas 75074.

2.      Upon information and belief, BOAC is a corporation organized and existing under the laws of the State of Delaware. BOAC is a holding company, of which BANA and Merrill Lynch are affiliates.[1] BOAC has a place of business at 100 North Tyron Street, Charlotte, North Carolina 28255, with additional regular and established places of business in this District at least at 2400 North Central Expressway, Plano, Texas 75074; 7001 Independence Parkway, Plano, Texas 75025; 2015 Coit Road, Plano, Texas 75075; 850 W. Arapaho Road, Richardson, Texas 75080; and 551 South Plano Road, Richardson, Texas 75081. Upon information and belief, BOAC may be served with process via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

23.      Upon information and belief, ~~Bank of America~~BANA is a corporation organized and existing under the laws of the ~~state~~State of Delaware, with a place of business at 100 North Tyron Street, Charlotte, North Carolina 28255, and with additional regular and established places of business in this District at least at 2400 North Central Expressway, Plano, Texas 75074; 7001 Independence Parkway, Plano, Texas 75025; 2015 Coit Road, Plano, Texas 75075; 850 W. Arapaho Road, Richardson, Texas 75080; and 551 South Plano Road, Richardson, Texas 75081. Upon information and belief, ~~Defendant~~BANA may be served with process via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.      Upon information and belief, Merrill Lynch is a corporation organized and existing under the laws of the State of Delaware, with a place of business at One Bryant Park, New York, New York, 10036, and with additional regular and established places of business in this District at least at 6751 Old Jacksonville Highway, Tyler, Texas 75703, 7675 Folsom Drive, Beaumont, Texas 77706, 5910 North Central Expressway Suite 2000, Dallas, Texas 75206, and 2100 Ross

---

[1] https://investor.bankofamerica.com/fixed-income/corporate-structure

Avenue, Suite 1000, Dallas, Texas 75201. Upon information and belief, Merrill Lynch may be served with process via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

3̶5. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

4̶6. This Court has specific and personal jurisdiction over D̶e̶f̶e̶n̶d̶a̶n̶t̶Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, D̶e̶f̶e̶n̶d̶a̶n̶t̶ ̶h̶a̶s̶Defendants have sufficient minimum contacts with the forum because D̶e̶f̶e̶n̶d̶a̶n̶t̶ ̶h̶a̶s̶Defendants have physical locations and t̶r̶a̶n̶s̶a̶c̶t̶s̶transact substantial business in the State of Texas and in this Judicial District. Further, D̶e̶f̶e̶n̶d̶a̶n̶t̶ ̶h̶a̶s̶Defendants have, directly or through subsidiaries or intermediaries, committed acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

5̶7. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). D̶e̶f̶e̶n̶d̶a̶n̶t̶ ̶i̶s̶Defendants are registered to do business in Texas and, upon information and belief, D̶e̶f̶e̶n̶d̶a̶n̶t̶ ̶h̶a̶s̶Defendants have transacted business in this Judicial District, h̶a̶s̶have committed acts of direct and indirect infringement in this Judicial District, and h̶a̶s̶have regular and established places of business in this Judicial District as set forth above. D̶e̶f̶e̶n̶d̶a̶n̶t̶ ̶i̶s̶Defendants are subject to personal jurisdiction in this Judicial District and h̶a̶s̶have committed acts of patent infringement in this Judicial District. On information and belief, D̶e̶f̶e̶n̶d̶a̶n̶t̶Defendants through i̶t̶s̶their own acts and/or through the acts of others, m̶a̶k̶e̶s̶,̶ ̶u̶s̶e̶s̶,̶ ̶s̶e̶l̶l̶s̶,̶ ̶o̶f̶f̶e̶r̶s̶make, use, sell, offer to sell, and/or i̶m̶p̶o̶r̶t̶s̶import infringing products within this Judicial District, regularly d̶o̶e̶s̶do and

solicits solicit business in this Judicial District, and has have the requisite minimum contacts

with the Judicial

District, such that this venue is a fair and reasonable one. Further, upon information and belief, ~~Defendant has~~Defendants have admitted or not contested proper venue in this Judicial District in other patent infringement actions.

~~6~~8.     Upon information and belief, ~~Defendant maintains~~Defendants maintain offices and physical places of business throughout the United States, including in this Judicial District~~,~~. including, but not limited to: 7105 Corporate Drive, Plano, Texas 75024; 2400 North Central Expressway, Plano, Texas 75074; 7001 Independence Parkway, Plano, Texas 75025; 2015 Coit Road, Plano, Texas 75075; 850 W. Arapaho Road, Richardson, Texas 75080; and 551 South Plano Road, Richardson, Texas 75081.

9.     Upon information and belief, BOAC, BANA, and Merrill Lynch are all jointly responsible for offering their products and services through the Eastern District of Texas. For example, the Bank of America website states that " 'our' … refers to banking and non-banking U.S. subsidiaries and affiliates."[2] The statement continues to state that "by using our Sites and Mobile Apps you agree to the terms and conditions of [the Bank of America Privacy Policy]." Merril Lynch's website has the exact same policy.[3] This suggests BOAC, BANA, and Merrill Lynch are responsible for the content present on bankofamerica.com.

10.     Upon information and belief, the Bank of America Mobile Application also references BOAC and BANA trademarks, as shown below.

(Add) of America and related trademarks are trademarks of Bank of America Corporation
Bank of America, N.A. Member FDIC
©2024 Bank of America Corporation                                      4

---

[2] https://www.bankofamerica.com/security-center/privacy-overview/
[3] https://www.ml.com/privacy-and-security-center/privacy-and-security.html
[4] https://play.google.com/store/apps/details?id=com.infonow.bofa&hl=en_US

11.     Upon information and belief, BANA owns Merrill Lynch property within the Eastern District of Texas. For example, BANA is listed as the owner of the Merrill Lynch branch at 4100 South Medford Avenue, Lufkin, Texas, according to Angelina property tax records.



| (Add)[5] | Geo ID | Type | Owner Name | Owner ID | Address | |
|---|---|---|---|---|---|---|
| 79954 | P-44-44100-0474 | P | BANK OF AMERICA NA | 276661 | 4100 S MEDFORD AVE, LUFKIN 75901 | 5 |



[5] https://esearch.angelinacounty.net/Search/Result?keywords=OwnerName%3A%22Bank%20of%20America%22%20Year%3A2024
[6] https://www.google.com/maps/place/Merrill+Lynch+Wealth+Management/@31.9617823,-96.3631851,8.46z/data=!4m10!1m2!2m1!1sMerrill+Lynch!3m6!1s0x86383d780e62f3fd:0xf4cf11dccad2c1aa!8m2!3d31.313716!4d-94.7185225!15sCg1NZXJyaWxsIEx5bmNoIgOIAQGSARJpbnZlc3RtZW50X3NlcnZpY2XgAQA!16s%2Fg%2F1td6slx3?entry=ttu&g_ep=EgoyMDI1MDEwMi4wIKXMDSoASAFQAw%3D%3D

712.    Upon information and belief, ~~Defendant~~Defendants offers ~~its~~their products and services throughout Texas, including this Judicial District, by shipping, distributing, offering for sale, selling, and advertising ~~its~~their products through ~~its website~~their websites:



[17]

---

3

(Added)



13. Upon information and belief, ~~Defendant manages~~ Defendants manage the marketing, sales, and provision of services of ~~its~~ their products to customers and/or potential customers located in Texas and in the Eastern District of Texas.

14. Upon information and belief, Defendants hold numerous places of business within the Eastern District of Texas. For example, Google Maps shows Defendants' branch locations held out places of business in the Eastern District of Texas. Furthermore, Defendants advertise their places of business in the Eastern District of Texas on their own websites.

---

[8] https://advisor.ml.com/search?bylocation=true



9



10

9 https://www.google.com/maps/search/Bank+of+America/@32.3141208,-95.6823931,10z?entry=ttu&g_ep=EgoyMDI1MDEwMi4wIKXMDSoASAFQAw%3D%3D
10 https://locators.bankofamerica.com/?q=Plano,%20TX,%20US; *see also* https://www.dallasnews.com/business/banking/2021/11/04/bank-of-america-is-pumping-86-million-into-renovating-its-plano-campus/



15.    Upon information and belief, Defendants actively seek to employ people that live within the Eastern District of Texas. For example, Defendants advertise job openings within the Eastern District of Texas.



12

---

11 https://advisor.ml.com/search?bylocation=true
12 https://careers.bankofamerica.com/en-us/job-search?ref=search&start=0&rows=10&search=jobsByLocation&searchstring=Tyler%2C+TX



13

## U.S. PATENT NO. 7,249,262

~~9~~16.    On July 24, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,249,262 (the "'262 Patent") entitled "Method For Restricting Access To A Web Site By Remote Users." A true and correct copy of the '262 Patent is attached hereto as Exhibit A.

~~10~~17.    BrowserKey is the sole and exclusive owner of all right, title, and interest to and in the '262 Patent, and holds the exclusive right to take all actions necessary to enforce its rights to the '262 Patent, including the filing of this patent infringement lawsuit. BrowserKey also has the right to recover all damages for infringement of the '262 Patent as appropriate under the law.

## INFRINGEMENT ALLEGATIONS

~~11~~18.    The '262 Patent generally covers a method of restricting access to data maintained on a server computer by one or more authorized, networked client machines. The technology was developed by Leon E. Hauck and Brent J. Burval. This technique is incorporated into web and mobile applications made by numerous banking institutions, including ~~Bank of America~~Defendants.

---

[13] https://careers.bankofamerica.com/en-us/job-

search?ref=search&start=0&rows=10&search=jobsByLocation&searchstring=Plano%2C+TX

12. ~~Bank of America has~~ 19. Defendants have manufactured, used, marketed, distributed, sold, offered for sale, exported from, and imported into the United States, products that infringe the '262 Patent. These Accused Products include at least all versions and variants of the Bank of America Web and Mobile Applications, including web and mobile applications for all Bank of America affiliates [~~2~~ 14] (*e.g.*, Merrill Lynch) since 2018.

[~~2~~  ~~https://www.bankofamerica.com/security-center/affiliate-companies/~~]

[~~4~~]

~~13~~ 20.   BrowserKey has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the '262 Patent.

**COUNT I**
**(Infringement of the '262 Patent)**

~~14~~ 21.   Paragraphs 1 through ~~13~~ 20 are incorporated by reference as if fully set forth herein.

~~15~~ 22.   BrowserKey has not licensed or otherwise authorized ~~Bank of America~~ Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '262 Patent.

16.   ~~Bank of America~~ 23. Defendants directly infringes the '262 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '262 Patent. These products include at least all versions and variants of the Bank of America Web and Mobile Applications, for example the "Bank of America Mobile Banking" application for iOS and Android.

~~17~~ 24.   For example, ~~Bank of America~~ Defendants directly ~~infringes~~ infringe at least claim 11 of the '262 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of restricting access to data maintained on a server

computer by an authorized client machine, said method comprising the steps of: a. creating a session identifier in a computer

---

[14] https://www.bankofamerica.com/security-center/affiliate-companies/

remote from the client machine for a current browsing session of the client machine; b. transmitting to the client machine the session identifier created in step a.; c. storing the session identifier transmitted in step b. within the client machine; d. verifying, on the client machine, that the client machine is authorized to access data maintained on the server computer; e. obtaining the session identifier stored in step c., and storing such session identifier within a storage table remote from the client machine if such client machine was verified in step d.; f. transmitting a request by the client machine for access to data maintained on the server computer, such request including the session identifier stored in step c.; g. comparing the session identifier transmitted in step f. with

5

 the session identifier stored in the storage table during step e. to determine whether the request for access transmitted in step f. is authorized; and h. permitting access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is authorized, and denying access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is not authorized.

18 25.    The Accused Products practice a method of restricting access to data maintained on a server computer by an authorized client machine. For example, upon information and belief, on client machines running the Bank of America Mobile Application variant for Apple iOS, one method by which an operator may sign in to access Bank of America's "protected URLs," as a Bank of America account holder, is via Apple's Touch and Face ID (locally compared "biometrics").

19 26.    The Accused Products further practice a method creating a session identifier in a computer remote from the client machine for a current browsing session of the client machine. For

example, upon information and belief, Bank of America server computer(s) create one or more

session identifiers, remote from the client machine, when a new user agent session on the client machine initially requests, via the HTTP protocol, a Bank of America "protected URL."

2027.   Further, upon information and belief, when first launching the Bank of America Mobile Application, a user agent requests Bank of America URLs. In response to the request, one or more name-value pair(s) are created by the Bank of America server(s).

2128.   The Accused Products further practice a method of transmitting to the client machine the session identifier created in step a. Upon information and belief, ~~Bank of America transmits~~Defendants transmit the session identifier(s) to the client machine via the Internet. Session identifier(s) are

6

transmitted by the Bank of America HTTP server computer(s) to the client machine via one or more HTTP response headers and/or HTTP response bodies.

2229.   The Accused Products further practice a method of storing the session identifier transmitted in step b. within the client machine. Upon information and belief, per instructions from Bank of America servers and/or Bank of America computer code, the web browser stores the session identifiers(s) on the client machine.

(Deleted)



**Types of personal information we collect online**

The type of personal information we collect from and about you online will depend on how you interact with us and may include:

- **Contact Information** such as name, mailing address, email address, telephone and mobile number(s).

- **Account Application information** such as credit and income information.

- **Identifiers** such as Social Security number, account number(s), driver's license number (or comparable) or other information that identifies you for ordinary business purposes.

- **Access Authorization** such as user ID, alias, PIN and password and security questions and answers.

- **Documents or images** submitted via our Site or Mobile Apps to support account opening, such as statements and voided checks.

- **Debit/Credit Card Information** such as card number, expiration date, CVV2, billing address.

- **Debit/Credit Card Information** such as card number, expiration date, CVV2, billing address.

- **Information from your computer and mobile devices where allowed by individual browsers and/or operating systems,** such as:

  ◦ Unique device identifiers (for example Media Access Control (MAC) and Internet Protocol (IP) addresses)

  ◦ Browser type, version, language, and display/screen settings

  ◦ Information about how you use and interact with our Sites and Mobile Apps (for example, activities on pages visited, links clicked or unique and measurable patterns such as keystrokes, mouse clicks and movements, swipes and gestures)

  ◦ Communications data, such as your communication preferences and details or the content of your communications with us (e.g., text messages, chat messages)

  ◦ Responses to advertisements on sites and mobile apps where we advertise

  ◦ Log information such as your search and voice to text queries in the mobile app

  ◦ Search engine referrals

  ◦ Geolocation information (for example, for real time ATM or financial center location, upon request, or for fraud prevention)

  ◦ Social media preference

- **Information to facilitate virtual or in-person event management** (for example, attendee names, dietary requirements, special assistance needs, and travel details for participants).

**How We Use and Share Personal Information**

**How do we use your personal information?**

Personal information collected from and about you online described in this Notice may



(Added)

23 30.   The Accused Products further practice a method of verifying, on the client machine, that the client machine is authorized to access data maintained on the server computer. Upon information and belief, when the client machine supports Apple Touch / Face ID, and the Bank of America Mobile Application has been provisioned to sign in to Bank of America online services

---

[3] https://www.bankofamerica.com/content/documents/privacy/us-online-privacy-notice-en.pdf

via Touch / Face ID, Bank of America computer code automatically prompts the operator to sign in via Touch / Face ID immediately after the application is launched. The identity of the user is then verified on client machine, and the client machine sends that acknowledgement to the Bank of America online service.[16]

[15]   https://www.bankofamerica.com/content/documents/privacy/us-online-privacy-notice-en.pdf
[16] https://support.apple.com/guide/security/biometric-security-sec067eb0c9e/web



4/17

24 31.   The Accused Products further practice a method of obtaining the session identifier stored in step c., and storing such session identifier within a storage table remote from the client machine if such client machine was verified in step d. Upon information and belief, the Bank of America Web ~~Application is an extension or related~~ and Mobile Applications, after verification of the user, sends the unique session identifier stored in step c to a remote Bank of America storage table storing session identifier(s).For example, upon information and belief, the Bank of America Mobile Application further obtains session identifiers associated with a login such as static or dynamic session ID, token, and/or certificate.

---

4/17 https://www.bankofamerica.com/online-banking/mobile-and-online-banking-features/touch-id/

8
storing session identifier(s).



25 32.   The Accused Products further practice a method of transmitting a request by the client machine for access to data maintained on the server computer, such request including the session identifier stored in step c. Upon upon information and belief, per instructions from Bank of America servers and/or Bank of America computer code, upon successful sign in, the user agent is automatically redirected to the default Bank of America Mobile Application page (a Bank of America "Protected URL") which invokes one or more HTTP requests. The HTTP request(s) are transmitted by the client machine and such request(s) include session identifier(s) to overcome limitations of the stateless HTTP protocol.

26 33.   The Accused Products further practice a method of comparing the session identifier transmitted in step f. with the session identifier stored in the storage table during step e. to determine whether the request for access transmitted in step f. is authorized. Upon information and belief, Bank of America compares session identifier(s) remotely. For example, when session cookies (which store session identifiers(s)) are deleted from the client machine, the client machine is no longer logged in and no longer able to access Bank of America "Protected URLs." Further,

9

Bank of America indicates that "[i]f you delete cookies . . . you may be prompted to make selections again:"[518] for example, upon information and belief, Bank of America servers supporting the Bank of America Mobile and Web Applications compare the session identifier to the one stored in a storage table to identify whether the request for access (e.g., to a bank account) is authorized (e.g., whether the user is logged in based on a username and password and/or biometric information presented to the Web or Mobile Application).

---

[518] https://business.bofa.com/content/dam/boamlimages/documents/articles/ID19_0760/Cookie_Policy.pdf

10

Close                        Privacy

## Cookie Policy

Last updated August 25, 2023

This Cookie Policy ("Policy") applies to Bank of America legal entities that utilize the brand names Bank of America, Merrill, or BofA Securities as well as the following entities: Managed Account Advisors LLC and BAL Investment & Advisory, Inc., ("Company", "we", "us" or "our"). This Policy explains how we use cookies and similar tracking technologies when a user interacts with us online through our websites, mobile applications and digital services (collectively, "Sites and Mobile Apps").

### Introduction

We have developed this Policy to: (1) provide you with general information on cookies and other tracking technologies which we will refer to as "cookies"; (2) identify the specific purposes for processing personal data collected from or by the cookies set on our Sites and Mobile Apps; (3) explain if and how you can manage cookies settings on our Sites and Mobile Apps; and (4) inform you about the retention period for personal data collected through our Sites and Mobile Apps.

This Policy should be read in conjunction with other relevant privacy and data protection notices provided by Bank of America for your jurisdiction. Please refer to these notices for additional information about our privacy practices applicable to your product or service, including but not limited to our customers, financial professionals, associates and contractors:

- Our **U.S. Privacy** page includes notices applicable to Consumers and residents such as the **U.S. Online Privacy Notice** and **Employee and Contractor Data Protection Notices**; and
- Our **Global Privacy Notice** page supports our Corporate or Institutional clients including our **Digital Privacy Notice**.

### Cookies

A cookie is a small file containing certain pieces of data that is created and stored when you visit a website using a computer or mobile device. When you visit a website, a cookie may be used to track the activities of your browser and provide you with a more consistent, efficient online experience.

We may collect certain information about you through our use of cookies, software development kits (SDKs) and other tracking technologies when you use our Sites and Mobile Apps. For example, we identify and store the region where you are located based on your partially masked IP address (which is anonymized immediately thereafter) to direct you to the appropriate jurisdiction-specific webpage.

### Categories of Cookies

Below is a list of the types of cookies and tracking technologies used on one or more of our Sites and Mobile Apps.

| Category | Description | Common examples |
|---|---|---|
| Strictly Necessary | These cookies are necessary for the website to function and cannot be switched off in our systems. They may be in response to actions made by you that amount to a request for services, such as setting your privacy preferences. | • Cookies that if disabled prevent the Sites and Mobile Apps from functioning<br>• Load balancing to distribute network traffic across different servers<br>• Keeping users logged in while navigating the website using session cookies |
| Performance | Performance or analytical cookies enable us to measure and improve the performance of our Sites and Mobile Apps. None of this information can be used to identify a specific user. | • Collecting aggregated and anonymized data to improve functionality and features<br>• Measuring the number of unique visitors<br>• Enabling voice-to-text chat functionality<br>• Tracking tags that log how visitors use a website or app |
| Preference | Preference cookies enable Sites and Mobile Apps to provide enhanced functionality and personalization by allowing us to remember choices you make. Where a jurisdiction's Data Protection Authority has issued guidance that prohibits the use of Google Analytics, Google Analytics cookies will not be loaded, nor can be accepted, when the system identifies a user accessing our Sites and Mobile Apps with an IP address from that jurisdiction. | • Remembering choices from a previous visit or session<br>• Setting preferences such as privacy, language, font, text size and text prefills<br>• Watching a video or commenting on a blog<br>• Live chat functionality when engaged by the user, including voice to text<br>• Geolocation, which allows us to determine your location at the time of a location request; this information is not retained after the session ends |
| Advertising | Advertising cookies and technologies are used to deliver advertisements that may be relevant to you and your interests. Some of our online services also use small, encoded images such as tags and pixels. This information may be shared with other organizations such as advertisers.<br><br>We present tailored ads to you:<br>• On our Sites and Mobile Apps through ads that appear as you sign on or off your online accounts.<br>• In offline channels such as financial centers, call centers, and through direct marketing (for example email, mail, phone).<br>• On third-party websites and mobile apps not affiliated with Bank of America | • Marketing pixels that gather information about visitors on a website, including browsing behavior and types of ads clicked<br>• Advertising partners use cookies to remember that you have visited a site<br>• Tracking online activity for more relevant advertising including limiting the number of times you see an advertisement<br>• Measuring the effectiveness of an advertising campaign<br>• Interacting with social media platforms |



**Close**                                    11                       **Privacy**

| Software Development Kits ("SDK") | A software development kit (SDK) is a mobile-specific set of tools that provides a developer with the ability to build a custom app which can be added on, or connected, to another program. SDK packages are used to deliver similar technologies like cookies within the mobile experience. | Types of SDKs<br>• Java development kit (JDK)<br>• Windows 7 SDK<br>• the MacOS X SDK<br>• iPhone SDK |
|---|---|---|

**Managing Cookies**

We comply with local jurisdiction requirements and may disable some of the cookie technologies or you may have the ability to opt in or opt out of certain cookie types through a consent banner. Our consent banner will look different or may not be available depending on the jurisdiction from which you visit our Sites and Mobile Apps. If you delete cookies, access our Sites and Mobile Apps from a different device or change web browsers, you may be prompted to make your selections again.

Bank of America participates in the Digital Advertising Alliance ("DAA") self-regulatory Principles for Online Behavioral Advertising and uses the Advertising Options Icon on our behavioral ads on non-affiliated third-party sites (excluding ads appearing on platforms that do not accept the icon). Ads served on our behalf by these companies do not contain unencrypted personal information and we limit the use of personal information by companies that serve our ads. To learn more about all choices, or to opt out of interest-based advertising with non-affiliated third-party sites, visit Your Ad Choices powered by the Digital Advertising Alliance or through the Network Advertising Initiative's Opt-Out Tool. You may also visit the individual sites for additional information on their data and privacy practices and opt-out options.

When we contract with a third-party provider to manage the content of the information within our Sites and Mobile Apps, third-party providers are required by contract to only use your information for the purposes specified by us and to use reasonable measures to keep your information secure and confidential. If you leave one of our Sites or Mobile Apps, you will be presented with a notice that you are continuing to a site that we do not own. The third-party provider is solely responsible for cookies, cookie tracking and your choices for managing cookies on their site.

**Data Transfer**

Personal data of users who visit our Sites and Mobile Apps and/or use our services may be transferred or processed in any jurisdiction where we have facilities or in which we engage service providers, including the United States. Any such transfer shall be undertaken in accordance with applicable data protection law and our privacy notices.

**Retention**

Cookies have a duration period. Some cookies are temporary (session cookies), while others may stay on your browser until you delete them manually or until your browser deletes them based on the duration set within the cookie (persistent cookie).

We will retain personal information collected through cookies for as long as needed or permitted considering the purpose(s) for which it was obtained. The criteria used to determine our retention periods includes the purpose for which the personal data was collected, whether there is a legal obligation to which we are subject and whether retention is advisable considering our legal position (such as regarding applicable statutes of limitations, litigation, or regulatory investigations).

This Cookie Policy is subject to change from time to time. When we make changes, we will post the revised Policy on this page with a new "Last Updated" date.

2734.   The Accused Products further practice a method of permitting access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is authorized, and denying access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is not authorized. Upon information and belief, if the client machine is signed in, access to data maintained on Bank of America servers server(s) is authorized by Bank of

America. If

12

the client machine is not signed in, access to data maintained on Bank of America servers(s) is ~~denied by Bank of America.~~

denied by Bank of America. For example, upon information and belief, the session identifier is stored in temporary memory associated with the Bank of America Mobile and Web Applications (e.g., temporary memory of a web browser, temporary memory of a secure element in a mobile device, and/or other memory protected by cryptographic material), or is stored as a temporary file which expires based on the duration allowed for a user's login (e.g., a default or user-selected duration in the user's security settings).

~~28.~~    ~~Bank of America~~35.    Defendants indirectly ~~infringes~~infringe one or more claims of the '262 Patent by knowingly and intentionally inducing others, including Bank of America customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Bank of America Web and Mobile Applications.

~~29.~~    ~~Bank of America has~~36.    Defendants have indirectly infringed one or more claims of the '262 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Bank of America's customers and end-users, in this District and elsewhere in the United States. For example, Bank of America's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '262 Patent. ~~Bank of America induces~~Defendants induce this direct infringement through ~~its~~their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers

and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of ~~Bank of America's~~<u>Defendants'</u> inducement, ~~Bank of America's~~<u>Defendants'</u> customers and end-users use the Accused Products in a way ~~Bank of America intends~~<u>Defendants intend</u> and directly infringe the '262 Patent. ~~Bank of America performs~~

Defendants perform these affirmative acts with knowledge of the '262 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '262 Patent. For example, Defendants had direct knowledge of the '262 Patent as evident from the fact that Defendants cited the '262 Patent during the prosecution of application 12/845,881.[19] Additionally, Defendants also cited to the '262 Patent's priority application during the prosecution of applications 13/097,828 and 12/845,881, and U.S. Patent No. 9,026,991.[20]

13

30. Bank of America has 37. Defendants have indirectly infringed one or more claims of the '262 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Bank of America's Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '262 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '262 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Bank of America Defendants to be especially made or adapted for use in the infringement of the '262 Patent. Bank of America performs Defendants perform these affirmative acts with knowledge of the '262 Patent and with intent, or willful blindness, that they cause the direct infringement of the '262 Patent.

---

[19] https://patentcenter.uspto.gov/applications/12845881/displayReferences/usPatentDocs?application=

[20] https://patentcenter.uspto.gov/applications/13097828/displayReferences/usPatentDocs?application= ;

https://patentcenter.uspto.gov/applications/12845881/displayReferences/usPatentDocs?applicatio
n= ; https://patentcenter.uspto.gov/applications/13030597/ifw/docs?application=

31~~38~~.  BrowserKey has suffered damages as a result of ~~Defendant's~~Defendants' direct

and indirect infringement of the '262 Patent in an amount to be proved at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, BrowserKey prays for relief against ~~Bank of America~~Defendants as
follows:

    a.      Entry of judgment declaring that ~~Bank of America has~~Defendants have directly

and/or indirectly infringed one or more claims of the '262 Patent;

    b.      Entry of judgment declaring that ~~Bank of America's~~Defendants' infringement of
the '262 Patent is ~~willful;~~

willful;

~~14~~

    c.      An order awarding damages sufficient to compensate BrowserKey for

~~Defendant's~~Defendants' infringement of the '262 Patent, but in no event less than a reasonable

royalty, together with pre-judgment and post-judgment interest and costs;

    d.      Entry of judgment declaring that this case is exceptional and awarding

BrowserKey its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

    e.      An accounting for acts of infringement;

    f.      Such other equitable relief which may be requested and to which the Plaintiff is

entitled; and

    g.      Such other and further relief as the Court deems just and proper.

Dated: ~~October 2~~January 9, ~~2024~~2025          Respectfully submitted,

                                     */s/ Vincent J. Rubino, III*
                                     Alfred R. Fabricant
                                     NY Bar No. 2219392

Email: ffabricant@fabricantllp.com

Peter Lambrianakos
NY Bar No. 2894392
Email:
plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email:
vrubino@fabricantllp.com Jacob
Ostling
NY Bar No. 5684824
Email: jostling@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Justin Kurt Truelove
State Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

*ATTORNEYS FOR PLAINTIFF*
*BROWSERKEY INC.*

15